IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ROBERT FORD SR. and
ANNA FORD                                              PLAINTIFFS


        v.              Civil No. 05-2086


TRADITIONAL SPORTING GOODS, INC.
d/b/a/ TRADITIONS                                      DEFENDANT

### MEMORANDUM OPINION & ORDER

Now on this 30th day of October, 2006, there comes on for
consideration Defendants' Motion for Summary Judgment and
supporting documents (Docs. 50, 51, 54) and Plaintiff's Response
and supporting documents (Docs. 60, 61). The Court also
considers Defendant's Motion in Limine to Exclude Expert Witness
John Hamilton and related documents (Docs. 55, 62, 63, 69) and
its Motion in Limine to Exclude Expert Witness John Morse and
related documents. (Docs. 48, 49, 65, 83, 84).

In determining whether summary judgment is appropriate, the
Court must view the facts and inferences in the light most
favorable to the non-moving party. *See Rabushka v. Crane Co.*,
122 F.3d 559 (8th Cir. 1997). The moving party bears the burden
of establishing the absence of issues of material fact in the
record and of establishing that it is entitled to judgment as a
matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v.
Catrett*, 477 U.S. 316 (1986). To defeat a properly supported
motion for summary judgment, the nonmoving party must go beyond

the pleadings and designate specific facts showing a genuine issue of material fact for trial. *Id.* at 324. Thus, the "basic inquiry" for purposes of summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372 (8th Cir. 1996)(citation omitted).

## **Background**

Plaintiffs allege strict liability in tort, breach of implied warranty of marketability, and negligence. The named Defendants are Traditional Sporting Goods, Inc. d/b/a/ Traditions; Hodgdon Powder Company, Inc.; Traditions Rifles, Inc.; Hodgdon Inc.; and Traditions Inc. Only Defendant Traditional Sporting Goods, Inc. d/b/a/ Traditions remains in the case.

Plaintiffs' allegations stem from a hand injury sustained by Robert Ford while discharging a Traditions Buckhunter PRO In-Line .50 caliber rifle. Mr. Ford received the rifle as a gift from his daughter in 2003. The daughter purchased the rifle as a used product in a yard sale in Fort Smith, Arkansas. Mr. Ford knew the rifle had been previously used. The instruction and shooting manual was with the rifle, when received by Mr. Ford and he read and understood the manual.

Mr. Ford was present before the accident when the rifle was

2

fired a total of thirteen (13) times. On the day of the accident, he loaded the rifle with 100 grains by volume of Pyrodex RS propellant and a 300 grain saboted bullet. After the third shot on the day of the accident, Mr. Ford's son reported the rifle sounded louder than normal at discharge, but Mr. Ford inspected the rifle and said he found nothing. On shot number four on the day of the accident the bottom portion of the barrel near the breach exploded, which caused injury to Mr. Ford's hand and resulted in a partial amputation.

## STRICT TORT LIABILITY

Plaintiffs contend that Defendant Traditions sold the rifle in a condition that was unsafe, which made it unreasonably dangerous to users and consumers. Specifically, Plaintiffs contend that Defendant knew consumers would be using a quantity of Pyrodex RS powder that could generate pressure inside the barrel of the rifle that would exceed 25,000 pounds of pressure per square inch (psi) and that the rifle was only designed to withstand a pressure of less than 10,000 psi. Moreover, Plaintiff alleges Defendant marketed and sold the firearm knowing the pressure condition existed.

To sustain a cause of action for strict products liability, it is necessary to prove that the product was in a defective condition which rendered it unreasonably dangerous. Ark.Code Ann. § 16-116-102 (1987); *see also Berkeley Pump Co. v. Reed-*

AO72A
(Rev. 8/82)

*Joseph Land Co.,* 653 S.W.2d 128 (1983) (stating that the fact that product does not meet expectations of user does not meet definition; must be "unreasonably dangerous" as well as defective). To recover under a strict-liability theory, a plaintiff must prove, *inter alia,* that the defendant supplied the product in a defective condition that rendered it unreasonably dangerous and that the defective condition was the proximate cause of the plaintiff's harm. *See* Ark.Code Ann. § 4-86-102(a) (Repl.1996); *E.I. Du Pont de Nemours & Co. v. Dillaha,* 659 S.W.2d 756 (1983).

The doctrine of strict liability does not change the burden of proof as to the existence of a flaw or defect in a product, but it does do away with the necessity of proving negligence in order to recover for injuries resulting from a defective product. *Williams v. Smart Chevrolet Co.,* 730 S.W.2d 479 (1987). A "defective condition" is a condition that renders a product unsafe for reasonably foreseeable use and consumption. Ark.Code Ann. § 16-116-102(4) (1987). A product is "unreasonably dangerous" if it is dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable user, assuming the ordinary knowledge of the community or similar users as to its characteristics, propensities, risks, dangers, and proper and improper uses, as well as any special knowledge, training, or experience possessed by the user or which he was

4

required to possess. *See* Ark.Code Ann. § 16-116-102(7) (1987).

The plaintiff has the burden of proving that a defendant sold a product that should not have been sold and that it caused his injury. *Williams,* 730 S.W.2d 479. The mere possibility that this may have occurred is not enough, and there must be evidence from which the jury may reasonably conclude that it is more probable than not. *Id.* The mere fact of an accident, standing alone, does not make out a case that the product was defective. *Id.* However, the addition of other facts tending to show the defect existed before the accident may be sufficient. *Higgins v. General Motors Corp.,* 287 Ark. 390, 699 S.W.2d 741 (1985). Under appropriate circumstances, a user's testimony alone may be sufficient evidence. *Id.* The burden, however, remains on the plaintiff to prove that the product was sold in a defective condition *and* that it was unreasonably dangerous. *Farm Bureau Ins. Co. v. Case Corp.,* 878 S.W.2d 741 (1994); *see also O'Mara v. Dykema,* 942 S.W.2d 854 (1997).

Defendant contends Plaintiffs' experts are not qualified to offer expert opinions related to the product in question, and the Plaintiffs can not then sustain their burden of proof on a strict liability claim. Defendant states Plaintiffs have failed to present any evidence of a manufacturing defect that could establish the rifle barrel contained anomalies, inclusions, foreign debris, or other such unexpected features that could

AO72A
(Rev. 8/82)

have weakened the subject barrel. Further, Defendants contend Plaintiffs' design defect claim must also fail as Plaintiffs have failed to identify any defect in the product and have not connected any alleged defect to Plaintiffs' injuries and damages.

For the Court to rule on Defendant's Motion for Summary Judgment, it must consider Defendant's Motions in Limine. Defendant moves to exclude the testimony of Plaintiffs' experts Morse and Hamilton. Plaintiffs retained Hamilton to evaluate the pressure time curve present in the barrel of the rifle. Hamilton concluded the pressure in the barrel was 13,500 pounds per square inch (psi) at the time of the injury. Plaintiffs contend Hamilton can determine the pressure inside the gun when it failed and the location of the bullet when maximum pressure was reached. Defendants argue Hamilton is not qualified to testify as an expert because he did not perform any tests or review any background materials from the text he relied upon - the Lyman Black Powder Handbook and Loading Manual. Hamilton has never served as an expert in firearms and is not an expert in ballistics. Hamilton has a Master's degree in mechanical engineering, and specializes in thermal systems which is the study of energy, and is familiar with firearms only in general.

Plaintiffs retained Morse to determine the amount of pressure the rifle could withstand. Morse concluded, according

6

to the pressure vessel analysis he performed, the rifle could only withstand a maximum pressure of 12,500 psi. Additionally, Morse stated that the cold pultrusion process used in formation of the barrel was known to cause weakness in metals. Defendant contends Morse is not qualified by education, training, or experience to proffer any opinions and that Morse's conclusions are speculative, lack reliable foundation, proper methodology, and are not based on objective testing. Defendant further contends that Morse's opinions will mislead and confuse the jury.

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or other wise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The commentary to Rule 702 indicates that the rejection of expert testimony is the exception rather than the rule and that the more appropriate means of attacking questionable evidence is vigorous cross-examination and presentation of contrary evidence. While Hamilton may not, as Defendant contends, have any particular knowledge of or experience with firearms or ballistics, he has extensive knowledge and experience in the

7

fields of thermal systems and with time pressure curves. Similarly, Morse has a doctorate degree in mechanical engineering but with no experience, or personal or specialized knowledge of firearms. Morse applied a pressure vessel analysis to the metal, and this test appears to be an accepted test in this area. Moreover, both experts have looked at other potential causes of failure, and ruled those out.

While it is a close case of whether Plaintiffs' experts are qualified to render opinions, it appears the appropriate ruling is to allow the testimony of both Hamilton and Morse, subject to cross-examination of the methods and conclusions utilized. Accordingly, Defendant's Motions in Limine are DENIED. If the testimony of these experts is permitted, Plaintiffs could meet the burden of proof on the strict liability claim. Defendant's Motion for Summary Judgment is therefore denied as to Plaintiffs' strict liability claims for a manufacturing defect and design defect.

## FAILURE TO INSTRUCT/WARN

Defendant contends Plaintiffs have failed to present any proof on the failure to instruct/warn claim and that neither of Plaintiffs' experts are qualified to give opinions as to warnings nor has either expert offered any opinions. Plaintiffs do not address this issue in their response to the Motion for Summary Judgment and Defendant's Motion for Summary Judgment on

8

the claim for failure to instruct/warn is GRANTED.

**NEGLIGENCE CLAIM**

Defendant contends it was merely the importer and distributor of the rifle and that Plaintiffs' claim of negligence rests on a defect in the rifle. Defendant adopts the argument reflected above and as set out in its Motions in Limine to support its Motion for Summary Judgment on Plaintiffs negligence claim.

Plaintiffs contend its experts demonstrate that a dangerous condition and/or defect was present with the product Defendant marketed and sold, and as such Defendant could be liable to a foreseeable user of the rifle, such as Mr. Ford. In view of the Court's ruling on the testimony of Hamilton and Ford, Defendant's Motion for Summary Judgment on the negligence claim is DENIED.

**BREACH OF WARRANTY**

Defendants also move for Summary Judgment on Plaintiffs' Breach of Warranty Claim on the same basis as stated in their motion for summary judgment on Plaintiffs' strict liability claims. For the reasons reflected herein, Defendant's Motion for Summary Judgment on the Breach of Warranty claim is DENIED.

**CONCLUSION**

In conclusion, the Court determines Defendant's Motion for Summary Judgment (Doc. 50) is GRANTED IN PART AND DENIED IN

9

PART.  Defendant's Motion is GRANTED as to Plaintiffs' claims of Defendant's Failure to Instruct/Warn.  Defendant's Motion for Summary Judgment is DENIED as to all other claims.  Defendant's Motions in Limine (Docs. 48, 55) are DENIED.

IT IS SO ORDERED this 30th day of October, 2006.


/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge

AO72A
(Rev. 8/82)